# United States District Court

NORTHERN DISTRICT OF GEORGIA

**ORIGINAL**

UNITED STATES OF AMERICA
v.

VICTOR MIDDLEBROOK

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-179

FILED IN CHAMBERS
FEB 11 2013
U.S. MAGISTRATE JUDGE
N.D. GEORGIA

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning in or about October 2012 and continuing through December 2012, in Henry County and elsewhere in the Northern District of Georgia, the defendant did,

conspire to obstruct and affect commerce by unlawfully obtaining United States currency from another person, with the consent of that person, said consent having been induced under color of official right; attempt to possess with intent to distribute cocaine, a Schedule II controlled substance, and possess a firearm in furtherance of a drug trafficking crime

in violation of Title 18, United States Code, Section 1951, Title 21, United States Code, Section 841, and Title 18, United States Code, Section 924(c).

I further state that I am a agent of the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.    (X) Yes ( ) No

Signature of Complainant
James P. Hosty, IV

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

February 11, 2013                                at    Atlanta, Georgia
Date                                                   City and State

Alan J. Baverman
United States Magistrate Judge
Name and Title of Judicial Officer                     Signature of Judicial Officer
AUSA Brent A. Gray

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT
## FOR VICTOR MIDDLEBROOK

I, James P. Hosty, IV, being duly sworn, depose and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 7 years. I am currently assigned to the Atlanta, Georgia office and work on the Civil Rights/Human Trafficking/Public Corruption Squad, which has the responsibility for investigating police corruption, among other federal crimes. I am a law enforcement officer of the United States, FBI, U.S. Department of Justice, within the meaning of Title 18, United States Code, Section 3052, which includes being an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses pursuant to Title 18, United States Code, Section 3052.

2. During my law enforcement career, I have participated in dozens of investigations relating to drug trafficking and police corruption. I have received specialized training in the methods and techniques used by drug trafficking organizations. I have debriefed many witnesses and confidential informants about drug trafficking generally, as well as the specific practice of employing corrupt law enforcement officers as part of a drug trafficking scheme. Through this training and experience, I have become familiar with many of the patterns of activity exhibited by drug traffickers. Except where I state that I am relying on my training and experience as described here, the information in this affidavit is based on information and belief, the source of that information and basis for that belief being my own investigation and information obtained by other law enforcement agents.

3. I submit this affidavit in support of a warrant for the arrest of VICTOR MIDDLEBROOK for conspiracy to commit extortion under color of official right in violation of

Title 18, United States Code, Section 1951, attempted possession with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841 and possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 942(c).

## BACKGROUND OF INVESTIGATION

4. Based on my training and experience, I know that sophisticated drug trafficking groups distribute narcotics using a variety of covert methods that are designed to avoid detection by law enforcement and others. If detected, they are aware law enforcement will seize the drugs and money and arrest them. They also know that other drug dealers or criminal groups will rob them, if given a chance, stealing both the drugs and money. In the worst case, drug deals can turn violent.

5. Given these risks, drug traffickers occasionally attempt to enlist law enforcement officers to provide protection both for them and the drug transactions they conduct. In employing corrupt police officers at a drug deal, the traffickers hope to prevent rival groups from intervening and ultimately stealing their drugs and the drug proceeds. Additionally, they hope to keep legitimate law enforcement at bay by positioning a visible law enforcement presence at or near the drug transactions. In these cases, drug traffickers are willing to pay thousands of dollars to corrupt law enforcement officers who will provide protection for these transactions.

6. In August, 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating a street gang in the Metro Atlanta area. During the course of that investigation, a confidential informant (CI-1) provided information about the gang's criminal activities. CI-1 told federal agents that police officers were involved in protecting the gang's activities, including their drug trafficking crimes. In general, these police officers, in uniform, driving police vehicles or otherwise displaying indicia of their positions, protected the drug dealers from being detected or arrested by other law enforcement officers and from being robbed by other drug dealers. The

information provided to federal agents by CI-1 regarding the use of law enforcement officers to protect drug deals is consistent with my experience and training in the investigation of similar cases.

7. CI-1, who had been working with federal agents since August, 2011, communicated to gang members and their associates that CI-1 would need police protection for his/her upcoming drug transactions. Shortly thereafter, Shannon Bass, Jerry B. Mannery, Jr., and Elizabeth Coss, none of whom are law enforcement officers, began identifying to CI-1 law enforcement officers interested in protecting his/her drug deals. Once those individuals were identified, information regarding the location and circumstances of the proposed drug deals was relayed to CI-1 and/or Shannon Bass, Jerry B. Mannery, Jr., Elizabeth Coss for him/her to pass along to law enforcement officers who expressed an interest in protecting the drug transactions.

## FACTS ESTABLISHING PROBABLE CAUSE

8. On four separate occasions, beginning in or about October, 2012 and continuing through December, 2012, VICTOR MIDDLEBROOK, a sergeant with the Forest Park Police Department (FPPD), provided protection for what he believed to be drug transactions involving multiple kilograms of cocaine.

9. VICTOR MIDDLEBROOK has worked as a police officer with the FPPD since September, 2008.

10. <u>Meeting on October 3, 2012.</u> On or about October 3, 2012, a confidential information (CI-1) met with an individual known as "Big Ben." During the conversation, "Big Ben," who knew that CI-1 had been using Atlanta-area police officers to protect drug transactions, advised that he had "another one," referring to a police officer who would be interested in protecting drug transactions. "Big Ben" provided the name VICTOR MIDDLEBROOK and a phone number

of 404-784-███.  Later the same day, CI-1 called VICTOR MIDDLEBROOK who agreed to protect a drug transaction on October 5, 2012 in exchange for $3,200.

11.     Drug Transaction on October 5, 2012. On October 5, 2012, FBI and ATF agents surveilled a meeting between VICTOR MIDDLEBROOK, CI-1 and CI-2 at a Kroger store, 1750 Hudson Bridge Road, Stockbridge, Georgia. When CI-1 arrived at the store parking lot, he/she parked near the gas pumps. At the same time, the agents observed VICTOR MIDDLEBROOK parked in his personal vehicle in the parking stalls next to the gas pumps. A short time later, CI-2 arrived and parked next to CI-1. CI-2 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, VICTOR MIDDLEBROOK, dressed in plain clothes but wearing a police badge and a firearm in a holster on his belt, got out of his vehicle and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-2 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-2 gave CI-1 a backpack containing $3,200. CI-2 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. VICTOR MIDDLEBROOK then walked up to CI-1's vehicle and took the $3,200 payment from CI-1.

12.     Drug Transaction on October 11, 2012. On October 11, 2012, FBI and ATF agents surveilled a meeting between VICTOR MIDDLEBROOK, CI-1 and UC-6 at a Kroger store, 1750 Hudson Bridge Road, Stockbridge, Georgia. When CI-1 arrived at the store parking lot, he/she parked near the gas pumps. At the same time, the agents observed VICTOR MIDDLEBROOK parked in his personal vehicle in the parking stalls next to the gas pumps. A short time later, UC-6 arrived and parked next to CI-1. UC-6 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, VICTOR MIDDLEBROOK, dressed in plain clothes but wearing a police badge and a firearm in a holster on his belt, got out of his vehicle and appeared to be watching

CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided UC-6 a backpack containing three kilograms of counterfeit cocaine. In exchange, UC-6 gave CI-1 a backpack containing $3,200. UC-6 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. VICTOR MIDDLEBROOK then got into CI-1's vehicle and took the $3,200 payment from CI-1.

13.     <u>Drug Transaction on October 18, 2012.</u> On October 18, 2012, FBI and ATF agents surveilled a meeting between VICTOR MIDDLEBROOK, CI-1 and UC-7 at a Kroger store, 1750 Hudson Bridge Road, Stockbridge, Georgia. When CI-1 arrived at the store parking lot, he/she parked near the gas pumps. At the same time, the agents observed VICTOR MIDDLEBROOK parked in his personal vehicle in the parking stalls next to the gas pumps. A short time later, UC-7 arrived and parked next to CI-1. UC-7 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, VICTOR MIDDLEBROOK, dressed in plain clothes but wearing a police badge and a firearm in a holster on his belt, got out of his vehicle and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided UC-7 a backpack containing three kilograms of counterfeit cocaine. In exchange, UC-7 gave CI-1 a backpack containing $3,200. UC-7 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. VICTOR MIDDLEBROOK then got into CI-1's vehicle and took the $3,200 payment from CI-1. <u>Drug Transaction on October 26, 2012.</u> On October 26, 2012, ATF agents surveilled a meeting between VICTOR MIDDLEBROOK, CI-1 and UC-7 at a Kroger store, 1750 Hudson Bridge Road, Stockbridge, Georgia. When CI-1 arrived at the store parking lot, he/she parked near the gas pumps. At the same time, the agents observed VICTOR MIDDLEBROOK parked in his personal vehicle in the parking stalls next to the gas pumps. A short time later, UC-7 arrived and parked next to CI-1. UC-7 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, VICTOR MIDDLEBROOK, dressed in plain clothes, got out of his vehicle and appeared to be

watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided UC-7 a backpack containing three kilograms of counterfeit cocaine. In exchange, UC-7 gave CI-1 a backpack containing $4,200. UC-7 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. CI-1 and VICTOR MIDDLEBROOK also left and drove separately to the Quick Trip, 1614 Hudson Bridge Road, Stockbridge, Georgia. At the Quick Trip, VICTOR MIDDLEBROOK got into CI-1's vehicle and took the $4,200 payment from CI-1.

14.     <u>Drug Transaction on November 5, 2012.</u> On November 5, 2012, FBI and ATF agents surveilled a meeting between VICTOR MIDDLEBROOK and FPPD Officer Andrew Monroe at a Kroger store, 1750 Hudson Bridge Road, Stockbridge, Georgia. After talking, VICTOR MIDDLEBROOK and Monroe got into separate personal vehicles and parked in stalls near the gas pumps. Then, CI-1 arrived at the store parking lot and also parked near the gas pumps. A short time later, CI-2 arrived and parked next to CI-1. CI-2 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, VICTOR MIDDLEBROOK, dressed in plain clothes but wearing a police badge and a firearm in a holster on his belt, got out of his vehicle and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-2 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-2 gave CI-1 a backpack containing $5,200. CI-2 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. Then, as prearranged, Monroe followed CI-2 until CI-2 reached Interstate 75. VICTOR MIDDLEBROOK and CI-1 drove separately to the Quick Trip, 1614 Hudson Bridge Road, Stockbridge, Georgia. At the Quick Trip, VICTOR MIDDLEBROOK got into CI-1's vehicle and took the $5,200 payment from CI-1. VICTOR MIDDLEBROOK then drove from Quick Trip to Fire House Subs, 1465 Hudson Bridge Road, Stockbridge, Georgia. There, VICTOR MIDDLEBROOK met Monroe. These transactions were audio and video recorded.

15.     <u>Drug Transaction on December 7, 2012.</u> On December 7, 2012, FBI and ATF agents surveilled a meeting between VICTOR MIDDLEBROOK, FPPD Officer Andrew Monroe and CI-1 inside a Kroger store, 1750 Hudson Bridge Road, Stockbridge, Georgia. During that meeting, CI-1 told VICTOR MIDDLEBROOK and Monroe that the prearranged drug transaction that was to take place immediately would be "a three brick deal." After talking, VICTOR MIDDLEBROOK, Monroe and CI-1 walked into the parking lot and got into separate vehicles. VICTOR MIDDLEBROOK parked near the gas pumps, directly behind CI-1. Monroe parked nearby. Then, CI-2 arrived at the store parking lot and parked next to CI-1. CI-2 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, VICTOR MIDDLEBROOK, dressed in plain clothes but wearing a police badge and a firearm in a holster on his belt, got out of his vehicle and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-2 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-2 gave CI-1 a backpack containing $5,200. CI-2 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. Then, as prearranged, Monroe followed CI-2 for a few miles. VICTOR MIDDLEBROOK and CI-1 drove separately to the Quick Trip, 1614 Hudson Bridge Road, Stockbridge, Georgia. At the Quick Trip, VICTOR MIDDLEBROOK got into CI-1's vehicle and took the $5,200 payment from CI-1. VICTOR MIDDLEBROOK then drove from Quick Trip to Fire House Subs, 1465 Hudson Bridge Road, Stockbridge, Georgia. There, VICTOR MIDDLEBROOK met Monroe. These transactions were audio and video recorded.

16.     In communications leading up to and through the above-described drug transactions, the drug involved was described to VICTOR MIDDLEBROOK as cocaine.

CONCLUSION

17.     Based on the foregoing, I submit there is probable cause to believe that VICTOR MIDDLEBROOK conspired to commit extortion under color of official right in violation of Title 18, United States Code, Section 1951, attempted to possess with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841, and possessed a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).